UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
 ------------------------------------------------------------------X

ANNE CAMERON CAIN, individually and as
representative on behalf of the Estate of ALEXANDER
PINCZOWSKI;

BEATRIZ GONZALEZ, individually and as
representative on behalf of the Estate of NOHEMI
GONZALEZ; JOSE HERNANDEZ; REY GONZALEZ;
AND PAUL GONZALEZ,

Docket No:
17-cv-122 (PAC)

                          Plaintiffs,

              -against-

TWITTER, INC.,

                   Defendant.

 ------------------------------------------------------------------X

---

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTIONS TO TRANSFER**

---

# THE BERKMAN LAW OFFICE, LLC
*Attorneys for Plaintiffs*
111 LIVINGSTON STREET, SUITE 1928
BROOKLYN, NEW YORK 11201
718-855-3627

## Table of Contents

**TABLE OF AUTHORITIES** ................................................................................................ ii

**INTRODUCTION** ...............................................................................................................1

**BACKGROUND** ................................................................................................................1

**A.**      **The Brussels Attack: Cain/Pinczowski**      **1**

**B.**      **The Paris Attack: Gonzalez** ..................................................................................2

**C.**      **This Case: Cain, et al. v. Twitter, Inc.**      **3**

**D.**      **The Separate California Case:** *Gonzalez v. Google, Inc.*   **4**

**E.**      **Twitter's Repeated Attempts to Control and Limit Litigation by Claiming**
         **"Substantial Overlap" and the Possibility of "Conflicting Results"**      **7**

**ARGUMENT** .....................................................................................................................9

         **POINT I**

         **PLAINTIFFS' CHOICE OF VENUE IS ENTITLED TO HEIGHTENED DEFERENCE**
         **IN THIS ATA LAWSUIT   10**

**POINT II**

**THE CALIFORNIA LAWSUIT IS SEPARATE AND DISTINCT FROM THIS CASE**
     **12**


**POINT III**

**THIS CASE HAS STRONG TIES TO NEW YORK AND TWITTER HAS NOT SHOWN THAT PLAINTIFFS' CHOICE OF VENUE SHOULD BE DISREGARDED**
     **14**


**POINT IV**

**PLAINTIFFS' LEGITIMATE CHOICE TO BRING THEIR CLAIMS IN NEW YORK IS NOT IMPROPER "FORUM SHOPPING"**     **19**


**CONCLUSION**     **21**

## **Table of Authorities**

<u>Cases</u>

*Gonzalez v. Google, Inc.*, Civil Action No. 4:16-CV-03282-DMR (N.D. Cal. filed June 14, 2016) ........................................................................................................................ 4

*Fields v. Twitter*, Civil Action No. 3:2016-CV-00213[WHO] .................................................... 7

*Ford Motor Co. v. Ryan*, 182 F.2d 329 (2d Cir.), *cert. denied*, 340 U.S. 851 (1950) .............. 11

*In the Matter of the Estate of Nohemi Gonzalez, Decedent*, Case No. 16STPB02109 (Cal. Sup. Ct., L.A. County, Central Dist. filed Jul. 7, 2016) .................................................. 5

*Merrill Lynch v. Rajcher*, 609 F. Supp. 291, 293 (S.D.N.Y.1985) ........................................... 11

*New York Marine & Gen. Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 114 (2d Cir., 2010) .................................................................................................................... 10

*Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 789 (S.D.N.Y., 2015) ................ 10

*O'Brien v. Goldstar Technology, Inc.*, 812 F. Supp. 383, 385 (W.D.N.Y. 1993) ..................... 10

*Star Lines Ltd. v. Puerto Rico Maritime Shipping Authority*, 442 F. Supp. 1201, 1205 n. 10 (S.D.N.Y.1978) ................................................................................................................ 11

*U.S. v. Brown University*, 772 F. Supp. 241 (E.D. Pa. 1991) .................................................. 11

*Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 283 (E.D.N.Y. 2016) .................. 9

*Wultz v. Bank of China, Ltd.*, 298 F.R.D. 91, 98 (S.D.N.Y. 2014) ........................................... 18

<u>Statutes</u>

15 U.S.C. § 15(a) .............................................................................................................. 10, 11

18 U.S.C. § 2333 ....................................................................................................... 1, 3, 9, 12

18 U.S.C. § 2334(a) ............................................................................................................... 12

18 U.S.C. § 2334(c) .................................................................................................. 18

28 U.S.C. § 1404(a) ........................................................................................... passim

Pub. L. No. 114-222 (2016) ...................................................................................... 1, 3

<u>Rules</u>

Cal. Civ. Proc. Code § 377.32(a)(6) ...................................................................... 4, 15

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 5

Fed. R. Civ. P. 45(c) ................................................................................................... 18

## INTRODUCTION

This is a case brought on behalf of the families of terror victims pursuant to the Antiterrorism Act, 18 U.S.C. § 2333 ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222 (2016) ("JASTA"). The ATA's special jurisdiction and venue provisions, which extend nationwide, were designed to give these plaintiffs the widest possible choice of forums to bring their claims, and their choice is therefore entitled to particular respect. Twitter presents to this Court a selective set of factual assertions, seeking to transfer this action for "convenience" to its home turf in the Northern District of California, where none of the Plaintiffs reside. However, taking all of the relevant circumstances and factors into consideration, Twitter has not met its heavy burden of showing that Plaintiffs' choice of forum should be disturbed. Accordingly, Twitter's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) should be denied.

## BACKGROUND

### A.      The Brussels Attack: Cain/Pinczowski

Just over one year ago, on March 22, 2016, ISIS terrorists claimed the lives of New York resident Alexander Pinczowski ("Alex") and his sister Sascha, both in their twenties, in the Brussels airport as the two were preparing to fly back to Alex's wife, Anne Cameron Cain ("Cameron"), in New York. First Amended Complaint ("FAC") (DE 15) ¶¶519-21. Alex and Cameron lived in New York, where they were married in 2013. FAC ¶¶ 516-17. Although at the time of the attack Sascha was temporarily living in Europe, she had graduated from New York's Marymount Manhattan College in 2015 and stayed in New York that summer to work as an intern. FAC ¶ 518. Sascha had decided to accompany Alex on the flight to New York because

she was planning to move back to New York to live near Alex and Cameron and to begin her career. FAC ¶ 519.

In the immediate aftermath of the Brussels attack, Alex and Sascha were not immediately identified and were reported as missing. In New York, Cameron was distraught when she learned of the Brussels attack because she knew that her husband and sister-in-law were supposed to be at the airport at that time. She was panic-stricken not being able to reach Alex or determine what had happened to him and his sister. FAC ¶¶ 523-25.

Cameron's parents rushed to New York, and the three flew from New York to Brussels on March 23, 2016 to join the search for Alex and Sascha. They frantically searched the hospitals of Brussels, spread photos around the city, and sent out pleas for assistance, while Cameron continued contacting people and posting notices to gain any information she could. Finally, on Friday, March 25, 2016, authorities confirmed that Alex and Sascha's bodies had been identified and that they were both killed in the attack. FAC ¶¶ 525-28.

Devastated by the tragic loss of her husband and sister-in-law, when Cameron returned from Brussels she was lonely and pained in New York without Alex. She decided to stay with her parents in North Carolina temporarily until she could regain her strength and return to New York. Although she allowed her apartment lease in New York to expire in October 2016, she still intends to return to New York to continue her life here.

### B.    The Paris Attack: Gonzalez

Four months earlier, on November 13, 2015, ISIS terrorists had carried out a series of attacks in Paris that murdered 130 people, including 23-year-old Nohemi Gonzalez ("Nohemi"), a college student from Los Angeles County, California, on a study-abroad program in France during her senior year. This was Nohemi's first trip to Europe. On the evening of the Paris

attack, Nohemi was out with friends at a restaurant in the café district on Rue de Charonne, when suddenly three ISIS terrorists exited a car and began spraying bullets from automatic weapons at people at the restaurant. Nohemi was among 19 people killed at the restaurant. FAC ¶¶ 507-12.

Nohemi's mother, Beatriz Gonzalez ("Beatriz"), with whom she lived, was a naturalized U.S. Citizen from Mexico who had worked for years as the sole provider to raise and nurture Nohemi to become a successful young woman. Nohemi was a college senior, and would have been the first person in her family to graduate from college. FAC ¶ 514.

**C.    This Case: Cain, et al. v. Twitter, Inc.**

On January 8, 2017, Alex's young widow, Cameron, individually and on behalf of Alex's estate, and Nohemi's mother, Beatriz Gonzalez ("Beatriz"), individually and on behalf of Nohemi's estate, together with Nohemi's other immediate family members, filed this action against Twitter pursuant to the Antiterrorism Act, 18 U.S.C. § 2333 ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222 (2016) ("JASTA"), for aiding, abetting, and knowingly providing material support and resources to the designated foreign terrorist organization ISIS in violation of federal criminal law. (DE 1).

In an extensive and highly-sourced complaint, now amended, Plaintiffs document the major role Twitter has famously played for years in the rise and expansion of ISIS to become one of the largest and most feared terrorist organizations in the world. Plaintiffs have identified Twitter accounts used by ISIS terrorists who carried out the Brussels and Paris attacks, and show how ISIS used Twitter before, during, and after the attacks in order to intensify the fear and intimidation they sought to generate by these attacks. (DE 15).

**D.     The Separate California Case: *Gonzalez v. Google, Inc.***

As Plaintiffs' counsel were preparing their complaint against Twitter to be filed in Cameron's home district in New York, an unexpected development occurred. On June 14, 2016, without notifying or obtaining consent from Beatriz, Nohemi's natural father, Reynaldo Gonzalez ("Reynaldo"), who had been estranged from Nohemi since she was about 11 years old, filed a lawsuit against Twitter, Google, and Facebook in the Northern District of California on his own behalf and purportedly on behalf of Nohemi's estate, styling himself as "successor-in-interest" to Nohemi's estate.[1]

Under California law, a person may not commence or continue an action as a decedent's successor if there is another person who has a "superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding," or if there is a proceeding pending for the administration of the estate. *See* Cal. Civ. Proc. Code § 377.32(a)(6). Due to a number of factors, including *inter alia* the fact that Beatriz had been the sole provider for Nohemi since age 11 and Reynaldo had a history of drug abuse and criminal activity, Beatriz had a superior right to bring an action on behalf of Nohemi's estate.

Upon learning of Reynaldo's lawsuit through the news media, Plaintiffs' counsel contacted Reynaldo's counsel, notified him that Beatriz would not consent to Reynaldo purporting to represent Nohemi's estate, and attempted to persuade Reynaldo's counsel to dismiss the California lawsuit (at least insofar as it purported to be brought on behalf of Nohemi's estate). Reynaldo's counsel refused.

---

[1] Civil Action No. 4:16-CV-03282-DMR (N.D. Cal. filed June 14, 2016), originally styled as: *Reynaldo Gonzalez, individually and as successor-in-interest of the Estate of Nohemi Gonzalez v. Twitter, Inc., Google, Inc., and Facebook, Inc.* ("The California Lawsuit").

On July 7, 2016, Beatriz filed a Petition for Letters of Administration in California Superior Court, County of Los Angeles, requesting to be appointed as sole Administrator of Nohemi's Estate, and notice was provided to Reynaldo.[2] Beatriz's counsel and Reynaldo's counsel subsequently conferred a number of times in an effort to resolve administration of Nohemi's estate and the pursuit of claims on behalf of the estate.

On September 2, 2016, pursuant to a stipulated extension of time, the defendants in the California Lawsuit filed a joint motion to dismiss the California Lawsuit for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

On October 14, 2016, Reynaldo's counsel filed a stipulation in the California Lawsuit notifying that court that Beatriz had filed a petition for administration of Nohemi's estate. In order to allow time for Reynaldo and Beatriz to attempt to resolve the estate administration issues, the stipulation proposed to extend until December 2, 2016, Reynaldo's deadline in the California Lawsuit for responding to the pending motion to dismiss or filing an amended complaint. The Court granted the stipulation by order filed October 18, 2016. Counsel for Reynaldo and Beatriz likewise filed a stipulation in the Estate Proceeding allowing Reynaldo until December 2, 2016 to file any objection to Beatriz's estate administration petition or to file a competing petition.

As the estate administration issues were not resolved by that date, on December 2, 2016, Reynaldo filed an objection to Beatriz's estate petition in the Estate Proceeding, and he filed an amended complaint in the California Lawsuit that same day. Without any notice, Reynaldo named Beatriz as a nominal *defendant* in his amended complaint.

---

[2] *In the Matter of the Estate of Nohemi Gonzalez, Decedent*, Case No. 16STPB02109 (Cal. Sup. Ct., L.A. County, Central Dist. filed Jul. 7, 2016) (the "Estate Proceeding").

On January 12, 2017, Beatriz filed a reply to Reynaldo's objection in the Estate Proceeding. That same day, she also filed a motion to stay the California Lawsuit pending the outcome of the Estate Proceeding, and notified the Court of the filing of this case, *Cain v. Twitter*, in this District. On January 17, 2017, the California Superior Court held a hearing in the Estate Proceeding and granted Beatriz's petition to be appointed as sole Administrator of Nohemi's estate. The official Letters of Administration appointing Beatriz as sole Administrator of Nohemi's estate were filed in the California Superior Court on January 25, 2017, and subsequently received by Beatriz and presented to the court in the California Lawsuit.

Although Reynaldo had purported to file his original and first amended complaints in the California Lawsuit as the "successor-in-interest" of Nohemi's estate, he did so without proper authority and without Beatriz's consent, and Plaintiffs' counsel did not participate in the preparation or drafting of those complaints.

Upon her official appointment as sole Administrator of Nohemi's estate, Beatriz promptly moved the court in the California Lawsuit to update the docket in that case to reflect that Beatriz (represented by her counsel) is the proper representative of Nohemi's estate. Beatriz and Reynaldo each then filed a notice of dismissal as to Twitter and Facebook, leaving Google as the sole defendant in the California Lawsuit.

Beatriz's motion for leave to file a new amended complaint in the California Lawsuit (solely against the remaining defendant, Google) is now pending, and Google has responded that it does not oppose the motion.

**E.      Twitter's Repeated Attempts to Control and Limit Litigation by Claiming "Substantial Overlap" and the Possibility of "Conflicting Results"**

Twitter's current motion to transfer is Twitter's third attempt to control and limit plaintiffs' ability to pursue legitimate litigation options, by claiming that separate lawsuits have "substantial overlap" and present the possibility of "conflicting results."

On January 13, 2016, the widow of a U.S. soldier killed by a terrorist in Jordan filed an unrelated ATA lawsuit against Twitter in the Northern District of California. *Fields v. Twitter*, Civil Action No. 3:2016-CV-00213[WHO]. (Counsel for the plaintiff in *Fields* is not affiliated with either Plaintiffs' or Reynaldo's counsel).

Reynaldo filed the California Lawsuit on June 14, 2016, and the case was assigned to a different judge than the judge presiding over the *Fields* case.

On June 15, 2016, the court in *Fields* held a hearing on Twitter's motion to dismiss that case. On June 27, 2016, after the transcript of the *Fields* hearing was released, Twitter submitted a motion requesting that Reynaldo's complaint against Twitter, Google, and Facebook pertaining to Nohemi's death in the Paris terrorist attack be treated as a "related case" with *Fields* and reassigned to the district judge presiding over the *Fields* lawsuit. Twitter asserted that there was "substantial overlap" between the two cases and that reassignment of Reynaldo's case was necessary to prevent the possibility of "conflicting results." (Notably, the district judge in *Fields* had already stated in the June 15, 2016 hearing that he was inclined to grant Twitter's motion to dismiss, but may allow the plaintiff an opportunity to amend the complaint). On June 29, 2016, the district judge in *Fields* promptly denied Twitter's motion to have the Gonzalez case reassigned to him, finding that the cases were not related.

Again in January 2017, Twitter attempted to control and limit plaintiffs' ability to pursue legitimate litigation options. On January 25, 2017, Beatriz filed a notice in the California

Lawsuit informing the court in that case that the California Superior Court had granted her petition for appointment as the sole Administrator of Nohemi's estate, and that the Letters of Administration would be forthcoming. Beatriz further reiterated that Reynaldo's original and first amended complaints were filed without proper authority to represent Nohemi's estate, and she stated her intention to dismiss the action on behalf of herself and the estate upon receiving the Letters of Administration. In response, on January 27, 2017, Twitter filed a motion in the California Lawsuit asking the court to issue a permanent injunction against Beatriz, enjoining her from prosecuting the *Cain v. Twitter* action in this Court (or anywhere else) because of the "substantial overlap" with the California Lawsuit and the possibility of "conflicting results."

After receiving the Letters of Administration, Beatriz decided to maintain the California Lawsuit solely as to Google but with a newly amended complaint. On February 2, 2017, Beatriz and Reynaldo each filed notices voluntarily dismissing Twitter and Facebook from the California Litigation. The proposed Second Amended Complaint in the California Lawsuit asserts claims solely against Google for Google's actions, and pertains to the Gonzalez family. The Second Amended Complaint in the California Lawsuit does not assert any claims against Twitter, nor does it assert any claims on behalf of Plaintiff Cain, whose husband was killed in a different attack, and who has no involvement in the California Lawsuit.

On March 15, 2017, Twitter filed the instant motion in this Court seeking to transfer this action, *Cain, et al. v. Twitter*, to the Northern District of California for "convenience" pursuant to 28 U.S.C. § 1404(a). In addition, Twitter once again seeks to force plaintiffs to litigate according to Twitter's terms, arguing that two separate cases must be tried in the same venue based upon Twitter's claim that there is "substantial overlap" between the cases and a possibility of

"conflicting results," even though one is a case against Twitter and the other is a case against Google, the cases do not have all plaintiffs and all underlying occurrences in common either.

## **ARGUMENT**

Twitter does not dispute that venue is proper in this District. Indeed, the ATA provides for both jurisdiction and venue nationwide, and Twitter has a substantial presence in New York, where it is registered to do business, maintains a business office with more than 150,000 square feet of space, and has approximately 100 employees. *See* 18 U.S.C. §§ 2333(a) and 2334(a); *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 283 (E.D.N.Y. 2016); SAC ¶¶ 45-47 (DE No. 1). Rather, Twitter seeks transfer of this case to the Northern District of California, where none of the Plaintiffs reside, under the discretionary transfer provisions of 28 U.S.C. § 1404(a).

Twitter's motion is premised upon three primary assertions. Twitter claims: 1) Plaintiffs should be required to prosecute this case together with the California Lawsuit because of "substantial overlap" and the possibility of "inconsistent results"; 2) the Northern District of California is more "convenient" and there is a "lack of any meaningful connection" to New York; and 3) Plaintiffs' choice of this District should be disregarded as merely "forum shopping." Each of these assertions is erroneous, and transfer is not supported by the facts and circumstances of this case. Moreover, Plaintiffs' choice of forum in this ATA case is entitled to particular respect, and Twitter cannot meet its heavy burden to demonstrate that this choice should be disturbed.

Accordingly, Twitter's motion to transfer pursuant to 28 U.S.C. § 1404(a) should be denied.

## POINT I

## PLAINTIFFS' CHOICE OF VENUE IS ENTITLED TO HEIGHTENED DEFERENCE IN THIS ATA LAWSUIT

Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

In the ordinary case involving a motion to transfer pursuant to § 1404(a), "[t]he moving party bears the burden of demonstrating 'a strong case for a transfer' by showing that, under all of the circumstances, the interests of justice and of the parties will be better served by the transfer." *O'Brien v. Goldstar Technology, Inc.*, 812 F. Supp. 383, 385 (W.D.N.Y. 1993); *see New York Marine & Gen. Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 114 (2d Cir., 2010) ("It is . . . appropriate that the district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion"). Moreover, in the ordinary case: "[A] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 789 (S.D.N.Y., 2015) (citation and internal quotation marks omitted).

However, courts have recognized that where Congress has enacted expansive venue provisions, as it has in the ATA, a plaintiff's choice of venue is entitled to heightened deference and the defendant's burden of demonstrating that transfer is warranted is "especially heavy."

For example, 15 U.S.C. § 15(a), which establishes a civil action for antitrust violations under the Clayton Act states in relevant part:

> any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor <u>in any district court of the United States in the district in which the defendant resides or is found or has an agent</u>, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15(a) (emphasis added). In *Ford Motor Co. v. Ryan*, 182 F.2d 329 (2d Cir.), *cert. denied*, 340 U.S. 851 (1950), the Court's holding that the district court did not abuse its discretion in denying a § 1404(a) motion to transfer was dependent upon Judge Learned Hand's concurrence, in which he stated: "I wish to put my vote solely upon the ground that § 15 of Title 15 U.S.C.A. gives to a plaintiff a privilege which a defendant must overcome by more than a bare balance of convenience between the two forums. . . . the privilege granted by § 15 still counts in the scale; a defendant must do more than show that the transfer will on the whole make the trial more convenient; it must make the trial markedly more convenient." 182 F.2d at 332. *See U.S. v. Brown University*, 772 F. Supp. 241 (E.D. Pa. 1991) ("Indeed, many courts, pointing to the liberal venue requirements for the government bringing an antitrust suit, have held that in such suits, plaintiffs' choice of forum is entitled to heightened respect") (citing *Ford Motor Co. v. Ryan*, 182 F.2d at 329; *Expoconsul Int'l Inc. v. A/E Systems, Inc.*, 711 F. Supp. 730, 735 (S.D.N.Y.1989); *Los Angeles Memorial Coliseum Com. v. National Football League*, 89 F.R.D. 497, 500 (C.D.Cal.1981)); *Star Lines Ltd. v. Puerto Rico Maritime Shipping Authority*, 442 F. Supp. 1201, 1205 n. 10 (S.D.N.Y.1978) ("That burden [on the § 1404(a) movant] is especially heavy in antitrust suits, where plaintiff's choice of forum is entitled to particular respect"). *See also Merrill Lynch v. Rajcher*, 609 F. Supp. 291, 293 (S.D.N.Y.1985) ("The venue provision of the [Securities] Exchange Act was designed to allow the plaintiff the widest possible choice of

forum, which will not be disturbed unless the movant shows the balance of convenience and justice weighs heavily in favor of transfer").

Congress likewise provided for expansive jurisdiction and venue under the ATA, allowing nationwide application. Title 18 U.S.C. § 2333(a) establishes a civil action under the ATA as follows:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor <u>in any appropriate district court of the United States</u> and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a) (emphasis added). Title 18 U.S.C. § 2334(a) sets out the general venue provisions for the ATA as follows:

> Any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for <u>any district where any plaintiff resides or where any defendant resides or is served, or has an agent</u>. Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.

18 U.S.C. § 2334(a) (emphasis added). Given the expansive venue provisions of the ATA which are designed to give plaintiffs the broadest choice of forums, Plaintiffs' choice of forum is entitled to special deference in deciding whether Twitter has meet its heightened burden to show that transfer under § 1404(a) is warranted.


**PART II**

**THE CALIFORNIA LAWSUIT IS SEPARATE AND DISTINCT FROM THIS CASE**

Twitter's primary contention as to why it claims this case should be transferred to the Northern District of California is that there is "substantial overlap" between the two cases and

there is a possibility of "inconsistent results." However, this contention is based upon Twitter's selective characterization of the cases and its disregard of key differences between them.

First, of course, Twitter is not a defendant in the California Lawsuit. Twitter has been dismissed entirely from the California Lawsuit and the outcome of that case will have no greater bearing on whether Twitter is liable in this case than the outcome of a similar lawsuit currently pending in the Eastern District of New York.[3] The proposed Second Amended Complaint in the California Lawsuit (a motion to amend the complaint is pending in California as of this writing) asserts claims only against Google based upon Google's own actions, just as the Amended Complaint in this case asserts claims only against Twitter based upon Twitter's own actions. Moreover, even if the two cases proceed together, because Google's "YouTube" platform and Twitter's social media platform are entirely different and have very different uses, the applicability of the CDA's immunity provision in each case would still involve considerations unique to each platform.

Second, unlike the case before this Court, the California Lawsuit does not involve any claims arising out of the March 2016 Brussels terrorist attack. Likewise, Plaintiff Cain, whose husband and sister-in-law were killed in the Brussels attack, is not involved in any manner in the California Lawsuit. Clearly, it would not be "in the interest of justice" to force Plaintiff Cain to litigate her claims against Twitter arising out of the 2016 Brussels attack, on the basis of another party's separate lawsuit against Google arising out of the 2015 Paris attack. Even if some of the same terrorists were involved, they were still two separate attacks.

---

[3] *Force v. Facebook*, Civil Action No. 16-05158 (NGG) (LB) (E.D.N.Y. filed Jul. 10, 2016), in which families of terror victims assert ATA claims against Facebook for providing material support to designated foreign terrorist organization Hamas, and Facebook claims immunity under the Communications Decency Act ("CDA").

-13-

Thus, this case is separate and distinct from the California Lawsuit and the similarities between the two do not warrant transfer of this case to the Northern District of California.

## PART III

## THIS CASE HAS STRONG TIES TO NEW YORK AND TWITTER HAS NOT SHOWN THAT PLAINTIFFS' CHOICE OF VENUE SHOULD BE DISREGARDED

Twitter contends that there is "a lack of any meaningful connection" between this case and New York, and that the balance of relevant factors warrants transfer to the Northern District of California. However, Twitter disregards the strong ties that this case has to New York, and it grossly overstates the factors that it cites as weighing in favor of transfer to the Northern District of California. When these matters are properly examined, Twitter has not met its burden, even under the usual "clear and convincing" standard, that Plaintiffs' choice of forum in this ATA case should be disturbed.

Courts have considered a number of factors in evaluating whether a motion to transfer venue under § 1404(a) should be granted or denied, including: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *New York Marine & Gen. Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 112 (2d Cir., 2010).

As mentioned, even in the usual case, "Plaintiff's choice of forum should not be disturbed unless the balancing factors strongly favor the defendant." *Austin v. Intern. Broth. of Teamsters-Airline Div.*, 739 F. Supp. 206, 208 (S.D.N.Y. 1990) (citing *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947)). Moreover, "[t]he defendant-movant has the burden of establishing that the

interests of justice as well as the convenience of the parties would better be served by transfer." *Austin*, 739 F. Supp. at 208 (citing *Factors Etc. Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908 (1979)).

This is a case brought pursuant to the ATA by the families of victims murdered in terror attacks carried out by ISIS terrorists in Paris, France in 2015 and in Brussels, Belgium in 2016. The Cain and Gonzalez families both seek to hold Twitter responsible for knowingly providing material support to ISIS, a designated foreign terrorist organization, in violation of federal criminal law. ATA litigation is known to be complex and challenging, and the cases brought pursuant to the ATA have historically not been widely distributed across the country. Indeed, a large percentage of ATA cases have been brought in relatively few jurisdictions, of which the district courts of New York are notably included. In contrast, the number of ATA cases that have been filed in California is extremely low. Accordingly, Plaintiffs reasonably preferred to bring their ATA claims in New York, where the ATA is less of a novelty than it is in California. *See Filmline (Cross-Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir., 1989) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964), for the proposition that "trial in state in which 'federal judges are more familiar with the governing laws' [is] a factor to be considered in determining motion for a change of venue").

Significantly, Beatriz did not choose to file the California Lawsuit; it was filed without notice to Beatriz and without her consent, and without proper authority to be filed on behalf of Nohemi's estate. Indeed, when Reynaldo filed his First Amended Complaint in the California Lawsuit on December 2, 2016, he was clearly precluded from doing so as "successor-in-interest" to Nohemi's estate since Beatriz's estate administration petition was then pending. *See* Cal. Civ. Proc. Code § 377.32(a)(6) (a person may not commence or continue an action as a decedent's

successor if there is a proceeding pending for the administration of the estate). It would not be consistent with "the interest of justice" to maintain that Reynaldo's unauthorized and improper pleadings in the California Lawsuit should preclude Beatriz from making her own choice of forum to pursue claims against Twitter in New York.

The choice of New York as the forum for this case was also not unrelated to the claims, as Twitter would like to portray. As demonstrated in the "Background" portion of this brief above, Plaintiff Cameron Cain and her husband Alex were married in New York and were living in New York at the time of the Brussels attack in which Alex and his sister were killed in March 2016. Alex and his sister were in the Brussels airport en route to New York, and Cameron was in New York when she received notice of the attack and that Alex and Sascha were missing. Sascha has just completed college and an internship in New York, and was in the process of making plans to move back there. Cameron's parents came to New York to comfort her, and they flew from New York to Brussels to search for Alex and Sascha. Cameron has been devastated by the loss of Alex and his sister, and after returning to New York from Brussels, she decided to stay with her parents in North Carolina temporarily until she could regain her strength. Nevertheless, she still intends to return to New York to continue her life here.

In response to the news of Alex and Sascha's death, New York City mayor Bill de Blasio said, "Two young siblings from our city were taken from us far too soon, and our hearts break for the family and friends of Sascha and Alexander . . . Today we vow to continue standing up for freedom and democracy in honor of those we have lost."[4] New York Governor Andrew M.

---

[4] Matthew Chayes, "Brussels attacks: NYC siblings Alexander, Sascha Pinczowski confirmed dead, family says," *Newsday* (Mar. 25, 2016), http://www.newsday.com/news/new-york/brussels-attacks-nyc-siblings-alexander-sascha-pinczowski-confirmed-dead-family-says-1.11617426.

-16-

Cuomo called Alex and Sascha "two of our own," and stated, "Their lives were cut short by cowards who have chosen extremism and hate instead of peace and unity."[5]

The comments of Mayor de Blasio and Governor Cuomo highlight the fact that New York has its own public interest in serving as a forum for a case involving harm to its citizens. *See K.T. v. Dash*, 37 A.D.3d 107, 114 (2006) ("New York has a strong interest in seeing that its aggrieved citizens obtain redress for wrongs committed upon them . . . regardless of where the act took place"). *See also O'Brien v. Goldstar Technology, Inc.*, 812 F. Supp. 383, 385 (W.D.N.Y. 1993) ("In ruling on a motion to transfer, the court should consider both the interest of the litigants and the public interest").

With regard to the location of witnesses, Twitter avers that its witnesses will largely be confined to employees in its "Trust and Safety Department" in San Francisco. However, Plaintiffs have identified a former Twitter employee currently located in New York who represents that he was a "Safety Policy Manager" at Twitter from September 2011 to December 2014, and who describes his duties at Twitter in part as follows:

> The primary author of content policies on Twitter and Vine, with an emphasis on abuse, hate speech, defamation, violent threats, privacy, child sexual exploitation, and terrorist activity. Conducted competitive analysis, determined potential legal risk, surveyed operational and business cost, managed a team of specialist to accurately respond to safety incidents and informed both internal and external partners to ensure successful launches.[6]

Twitter states that "[t]wo of the four Twitter employees or former employees mentioned in the Complaint currently reside in the Northern District of California"; however it concedes that two others reside in Washington, D.C., for which New York would certainly be more convenient. In

---

[5] *Id.*

[6] Profile of Eric Han, LinkedIn, https://www.linkedin.com/in/erickjhan/.

addition, the Twitter analytical company mentioned in the Complaint is headquartered in New York. Plaintiffs anticipate that they will likely retain one or more expert witnesses located in New York or D.C. Accordingly, on balance, the convenience of the witnesses does not weigh in favor of the Northern District of California over New York.

Twitter claims that the relevant evidence in this case will "overwhelmingly be found in the Northern District of California," asserting that documents and records are "either located in the Northern District of California or are maintained on secure servers located in or accessible from Twitter's offices in the Northern District of California." However, Twitter does not aver that those documents and records "maintained on secure servers located in or accessible from" its California offices are not also accessible from its New York office. In any case, with today's digital world it would seem highly unlikely that the burden of producing documents and records from California to New York would be overly burdensome, particularly for a digital-based business.

With regard to witnesses located outside of the forum venue, citing *Wultz v. Bank of China, Ltd.*, 298 F.R.D. 91, 98 (S.D.N.Y. 2014), Twitter argues that Plaintiffs' ability to compel non-party witnesses to testify will be limited to 100 miles under Fed. R. Civ. P. 45(c). However, Twitter's argument is incorrect. The issue in *Wultz* involved whether a non-party witness in a foreign country could be compelled to testify in New York. In that case, the ATA's special provision in 18 U.S.C. § 2334(c) authorizing nationwide service of a subpoena upon a witness was inapplicable because the witness was not located in the United States. Thus, the ruling in *Wultz* does not preclude use of the ATA's nationwide subpoena service to compel testimony in the forum district. Indeed, to interpret the statute otherwise would render it superfluous.

Finally, with regard to the convenience of the parties and their relative means, although none of the Plaintiffs resides in the Northern District of California, Twitter has a major office with more than 150,000 square feet and approximately 100 employees in the Southern District of New York. While Plaintiff Cain is temporarily staying with her parents in North Carolina, travel from North Carolina to New York is certainly more convenient that traveling to San Francisco. In addition, Twitter is an international company with a multi-billion dollar market capitalization, whereas the Plaintiffs are private individuals of much more limited means. Thus, these factors likewise do not weigh in favor of transfer.

Taking into account the totality of the circumstances, it cannot be said that Twitter has met its burden of making a "strong showing" that Plaintiffs' choice of venue should be disturbed in this case, much less that these factors would overcome a "heightened deference" that should be accorded in the ATA context. Accordingly, Twitter's motion to transfer should be denied.

**PART IV**

**PLAINTIFFS' LEGITIMATE CHOICE TO BRING THEIR CLAIMS IN NEW YORK IS NOT IMPROPER "FORUM SHOPPING"**

Twitter attempts to malign Plaintiffs' motives in bringing their claims against it in New York by asserting that, "forum shopping is the only conceivable reason why Plaintiffs would have chosen to file this action here." Twitter argues that New York "is neither their home nor the place where the operative facts of the action occurred," and that Plaintiffs "exacerbated 'the problem … by commencing two actions in two separate forums.'"

Plaintiffs have demonstrated herein that Twitter's assertions are based upon its own inaccurate characterizations and disregard of relevant facts. For example, Plaintiffs have demonstrated that New York was indeed the home of Plaintiff Cain, her husband, and previously

of her sister-in-law at the time of the 2016 Brussels terrorist attack that killed Alex and Sascha. Cameron was in New York when she learned the devastating news of the attack, and although she is temporarily staying with her parents in order to recover, she still intends to return to New York to continue her life here. Moreover, New York has its own public interest in seeing its residents compensated for their injuries.

Contrary to Twitter's argument, Plaintiffs did not "commenc[e] two actions in two separate forums." The lawsuit against Twitter in this District is the only lawsuit commenced by either Cameron Cain or Beatriz Gonzalez. Cameron had no involvement in the California Lawsuit. The California Lawsuit was filed without Beatriz's knowledge or consent, and Beatriz worked diligently through the appropriate processes to regain control of her rightful representation of Nohemi's estate. Beatriz's decision to continue the California Lawsuit against Google with a newly amended complaint does not prejudice Twitter in any way. Nor does Twitter suffer any prejudice by Plaintiffs filing their claims in New York, as properly authorized by the ATA's venue statute.

Accordingly, Plaintiffs' choice of venue in New York is entirely proper under the circumstances of this case, is entitled to significant deference, and should not be disturbed.

**CONCLUSION**

For the reasons set forth herein, Plaintiffs submit that Twitter's motion to transfer pursuant to 28 U.S.C. § 1404(a) should be denied.

Dated:   Brooklyn, New York
         April 7, 2017

                                        Respectfully submitted,

                                        THE BERKMAN LAW OFFICE, LLC
                                        *Attorneys for the Plaintiffs*

                                        by:  _____
                                               Robert J. Tolchin

                                        111 Livingston Street, Suite 1928
                                        Brooklyn, New York 11201
                                        718-855-3627