USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: April 25, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
ANNE CAMERON CAIN, individually and as
representative on behalf of the Estate of
ALEXANDER PINCZOWKSI, BEATRIZ
GONZALEZ, individually and as representative
on behalf of the Estate of NOHEMI
GONZALEZ, JOSE HERNANDEZ, REY
GONZALEZ, PAUL GONZALEZ, and
REYNALDO GONZALEZ,

            *Plaintiffs*,

  -*against*-

TWITTER, INC.,

            *Defendant*.
------------------------------------------------------------X

17 Civ. 122 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Beatriz Gonzalez ("Beatriz"), Jose Hernandez ("Hernandez"), Rey Gonzalez ("Rey"), Paul Gonzalez ("Paul"), Reynaldo Gonzalez ("Reynaldo," and together with Beatriz, Hernandez, Rey, and Paul, the "Gonzalez Plaintiffs"), and Anne Cameron Cain ("Cain," and together with the Gonzalez Plaintiffs, "Plaintiffs") sue Twitter, Inc. ("Twitter"), seeking damages pursuant to the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333. They allege that Twitter knowingly allowed ISIS members to use their platform, thereby providing "material support" to, aiding and abetting, and conspiring with ISIS in connection with two heinous terrorist attacks in Paris, France and Brussels, Belgium, that took the lives of three of Plaintiffs' family members. They also assert related claims for wrongful death and negligent infliction of emotional distress.

    Twitter moves, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the Northern District of California, where it has its principal place of business and where the Gonzalez

1

Plaintiffs have asserted similar claims against Google Inc. ("Google"). For the reasons below, the Court grants Twitter's motion

**BACKGROUND**

Plaintiffs allege that on November 13, 2015, Nohemi Gonzales ("Nohemi") was murdered by three ISIS terrorists who open fired at the Paris café where Nohemi and her friends were dining ("Paris Attack"). *See* Am. Compl., Dkt. 15, ¶¶ 510–12. They also allege that on March 22, 2016, siblings Alexander Pinczowski ("Alex") and Sascha Pinczowski ("Sascha") were murdered by a bomb detonated by an ISIS terrorist at the Brussels airport ("Brussels Attack"). *See id.* ¶¶ 520–21. Beatriz and Reynaldo are Nohemi's parents, Hernandez is Nohemi's step-father, and Rey and Paul are Nohemi's brothers. *Id.* ¶¶ 40–43. Alex was Cain's husband. *See id.* ¶ 39.

## I. The California Action

On June 14, 2016, Reynaldo commenced an action against Twitter, Google, and Facebook, Inc. ("Facebook") in the Northern District of California, on his own behalf and "as a successor-in-interest of the estate of his daughter Nohemi Gonzalez" ("California Action"). *See Gonzalez v. Twitter, Inc.*, 4:16-cv-03282-DMP (N.D. Cal.), Dkt. 1 ¶ 9. He asserted two claims against the defendants pursuant to the ATA, claiming that the defendants "knowingly permitted the terrorist group ISIS to use their social networks as a tool for spreading extremist propaganda, raising funds and attracting new recruits," thus enabling ISIS to carry out terrorist attacks, including the Paris Attack that resulted in Nohemi's death. *See id.* ¶ 1.

After Reynaldo filed the California Action, Nohemi's mother, Beatriz, filed a Petition for Probate in the Superior Court of California, County of Los Angeles, seeking appointment as the sole administrator of Nohemi's estate. *See* Mot. Ex. 6, Dkt. 14-8. On January 25, 2017, Letters

of Administration were filed in the California Superior Court appointing Beatriz as the sole administrator of Nohemi's estate. *See* California Action, Dkt. 73-1. On January 31, 2017, Beatriz informed the district court in the California Action of her appointment as administrator, and moved the court to update the docket to reflect that she is the administrator of Nohemi's estate. *See* California Action, Dkt. 72. On February 2, 2017, Beatriz and Reynaldo voluntarily dismissed, without prejudice, the claims against Twitter and Facebook. California Action, Dkt. 74, 75. On February 7, 2017, the district court granted Beatriz's motion for the docket to be updated to reflect that she is the administrator of Nohemi's estate. *See* California Action, Dkt. 77.

On April 21, 2017, the California Action plaintiffs filed a Second Amended Complaint against Google. California Action, Dkt. 95. The Second Amended Complaint asserts that Google aided and abetted, conspired with, and provided material support to ISIS in connection with, among other things, the Paris Attack that took Nohemi's life. *See id.* at 87–91.

## II. The Instant Action

On January 8, 2017, while Beatriz's petition for appointment as sole administrator of Nohemi's estate was pending, Beatriz, Cain, Hernandez, Rey, and Paul filed the instant action here in the Southern District of New York. *See* Compl., Dkt. 1. Beatriz brought the action individually and as representative on behalf of Nohemi's estate, and Cain brought the action individually and as representative on behalf of Alex's estate. On March 15, 2017, Twitter filed a motion to transfer this action to the Northern District of California. Dkt. 14, refiled as Dkt. 21. Twitter contends that the action has a "vanishingly small" connection with the Southern District, and that the action should be transferred to the Northern District of California where Twitter is headquartered, and where the "sister" California Action is currently pending. *See* Mot., Dkt. 22,

3

at 1.

Plaintiffs amended their Complaint on April 6, 2017, adding Reynaldo as a plaintiff, and opposed Twitter's transfer motion on April 7, 2017. Dkt. 15, 16. Plaintiffs argue that venue should not be transferred to the Northern District of California because no plaintiff resides there (Beatriz, Hernandez, Rey, and Paul appear to reside in Southern California, *see* Decl. of Patrick J. Carome, Mot. Ex. 2, Dkt. 22-3 ("Carome Decl.") ¶ 3, and Reynaldo lives in California, *see* Am. Compl. ¶ 43), "Alex and [Cain] lived in New York, where they were married in 2013," and Sascha "had graduated from New York's Marymount Manhattan College in 2015 and stayed in New York that summer to work as an intern." Opp'n, Dkt. 16, at 1.

## DISCUSSION

28 U.S.C § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Court must first determine whether this action could have been brought in the transferee district. Next, the Court must decide whether the transfer is in the interest of justice and for the parties' and witnesses' convenience.

There is no doubt that Plaintiffs are able to bring this action in the Northern District of California. The parties dispute, however, that transfer to the Northern District of California would be in the interest of justice and for the parties' and witnesses' convenience. Among the factors for the Court to consider in determining whether to exercise its discretion to transfer venue are "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of

unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). The Court may also consider the forum's familiarity with the governing law, and trial efficiency and the interest of justice. *See Winter v. Am. Inst. of Med. Scis. & Educ.*, --- F. Supp. 3d ---, 15 Civ. 7538 (NSR), 2017 WL 1063459, at *4 (S.D.N.Y. Mar. 17, 2017).

"There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). "Instead, weighing the balance is essentially an equitable task left to the Court's discretion." *Id.* (internal quotation marks omitted). Ultimately, the burden is on Twitter to make out a strong case for transfer by clear and convincing evidence. *See N.Y. Marine*, 599 F.3d at 114.

**I.     Trial Efficiency and the Interest of Justice**

Twitter's primary argument for transfer is that this action is related to the California Action. "[O]ne of the most important factors considered by courts in evaluating a motion to transfer is the existence of similar litigation in the transferee district." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 660 (S.D.N.Y. 1998). Indeed, it can be "decisive." *Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545, 550 (E.D.N.Y. 2012); *see also In re Anadarko*, 10 Civ. 4905 (PGG), 10 Civ. 05894 (PGG), 2012 WL 12894796, at *10 (S.D.N.Y. Mar. 19, 2012) ("[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative."). "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Columbia Pictures Indus., Inc. v. Fung*, 447 F. Supp. 2d 306, 309 (S.D.N.Y. 2006) (citing

5

*Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968)). "The interests of justice require that the cases be related, not identical." *Id.*

Of course, this action is related to the California Action. Five of the six plaintiffs are identical and represented by overlapping counsel, and all claims asserted in the California Action—four claims under the ATA—are asserted here. *Compare* California Action, Dkt. 95 *with* Dkt. 15. Plaintiffs struggle to explain why transfer would not be in the interest of justice or would not lead to significant discovery and trial efficiencies. First, they argue that Twitter is no longer named as a defendant in the California Action. *See* Opp'n at 13. True enough, but there will be significant factual overlap in the two actions, such as factual development relating to ISIS and the Paris Attack, as well as the Gonzalez Plaintiffs' injuries resulting from Nohemi's death. Legal questions, including the defenses that Google and Twitter likely will assert, almost completely overlap. The legal issues that will arise in the California Action will likely also all arise in this action. A court hearing either this or the California Action will have to understand and make decisions about the legal effects of Google and Twitter's services, and it would undoubtedly be more efficient for one court to hear both actions instead of two courts. *See Columbia Pictures*, 447 F. Supp. 2d at 310.

Second, Plaintiffs contend, in reference to Cain, Alex, and Sascha, "that New York has its own public interest in serving as a forum for a case involving harm to its citizens." Opp'n at 17. But there are no current New York citizens involved and besides, this argument applies with greater force to California's interest in serving as a forum for a case involving its own citizens—Nohemi and the five Gonzalez Plaintiffs.

Third, Plaintiffs urge that it is somehow significant that "Beatriz did not choose to file the California [Action]." *See* Opp'n at 15. But Beatriz has undeniably chosen to continue the

6

California Action against Google; her initial choice therefore is irrelevant.

Fourth, Plaintiffs assert that "it would not be 'in the interest of justice' to force Plaintiff Cain to litigate her claims against Twitter arising out of the 2016 Brussels attack, on the basis of another party's separate lawsuit against Google arising out of the 2015 Paris attack." Opp'n at 13. They continue that "[e]ven if some of the same terrorists were involved, they were still two separate attacks." *Id.* This is an issue of Plaintiffs' own making. Plaintiffs chose to join together their claims arising out of Nohemi, Alex, and Sascha's deaths. They thus have already taken the position that it is appropriate to bring claims based on both attacks in one lawsuit. Any other decision would allow plaintiffs to litigate the same claims in a piecemeal fashion against multiple defendants (perhaps because they are searching for the most favorable forum). The Court will not endorse a result that could promote forum shopping and result in substantial waste of judicial resources.

Instead, the Court concludes that the interest of justice strongly favors transfer to the Northern District of California. Not only is there significant factual and legal overlap, but a transfer could also reduce the potential for conflicting results, such as different determinations of the Gonzalez Plaintiffs' damages. Moreover, while no witnesses have been identified, logic dictates that many, if not all, of the Gonzalez Plaintiffs' witnesses (including in all likeliness the Gonzalez Plaintiffs themselves) will need to be deposed in both actions. Coordination of such discovery will be greatly facilitated if both actions are before the same court. And there would be even further significant judicial efficiencies if the two actions are consolidated. *See Bent v. Zounds Hearing Franchising, LLC*, 15 Civ. 6555 (PAE), 2016 WL 153092, at *6 (S.D.N.Y. Jan. 16, 2016) ("Transfer of an action to a district where a related case is pending enables more efficient conduct of pretrial discovery, [and] saves witnesses time and money in both trial and

pretrial proceedings . . . thereby eliminating unnecessary expense to the parties while at the same time serving the public interest.").

## II. Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Tlapanco v. Elges*, 207 F. Supp. 3d 324, 331 (S.D.N.Y. 2016). It "is the place where the acts or omissions for which [d]efendants could be held liable occurred." *Id.* (internal quotation marks omitted). The gravamen of Plaintiffs' Amended Complaint is that Twitter assisted and provided material support to ISIS by allowing ISIS members to use its platform and services to, among other things, spread their message, solicit funding, coordinate activities, and recruit ISIS members. As such, the locus of the operative facts is where Twitter made its decisions relating to ISIS accounts. These facts are in California, not New York.

Twitter states that the "Trust & Safety Department is the department within Twitter that is responsible for deciding what categories of content should be barred by the Twitter Rules, for formulating general policies and strategies regarding how Twitter will enforce those rules, for setting Twitter policies regarding the opening and suspension of accounts, for training Twitter employees on enforcement of the Twitter Rules, and for conducting quality assurance to confirm that enforcement has been implemented properly." Decl. of John Starr, Mot. Ex. 3, Dkt. 22-4, ("Starr Decl.") ¶ 6. Twitter also states that "[p]rior to April 2016, all Twitter employees within the Trust & Safety Department responsible for issues related to terrorism were based at Twitter's San Francisco headquarters, and, to the extent they are still employed by Twitter, all those employees continue to be based at that location." *Id.* Because the relevant terrorism-related decisions were made in the Northern District of California, this factor strongly favors transfer.

8

## III. Convenience of the Parties

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Sentegra, LLC v. ASUS Computer Int'l*, 15 Civ. 3768 (GHW), 2016 WL 3093988, at *4 (S.D.N.Y. June 1, 2016). As Twitter has explained, decisions relating to terrorism issues prior to April 2016 were based in Twitter's San Francisco headquarters. Starr Decl. ¶ 6. Further, Twitter's headquarters and several other offices are located in the Northern District of California. *Id.* ¶ 4. Plaintiffs argue that with respect to Cain, "travel from North Carolina to New York is certainly more convenient that [sic] traveling to San Francisco." Opp'n at 19. This does not rebut Twitter's argument that transfer would be *more* convenient for the remaining five plaintiffs, who all appear to reside in California. *See* Mot. at 15; Carome Decl. ¶ 3; Am. Compl. ¶ 43. This factor weighs in favor of transfer.

## IV. Convenience of the Witnesses

Convenience of the witnesses, and especially non-party witnesses, "is typically the most important factor when considering a motion to transfer." *Tlapanco*, 207 F. Supp. 3d at 329. "The Court must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Id.* (internal quotation marks omitted). Twitter states that it "expects, based on the plaintiffs' allegations, that the relevant Twitter employees who might be asked to provide testimony in this case would be employees who are based at Twitter's headquarters in San Francisco, California." Starr Decl. ¶ 3. Thus, although Twitter fails to identify any specific witnesses it intends to call, it would seem that facts about Twitter's witnesses are best obtained in California. Additionally, the five Gonzalez Plaintiffs, who likely will all need to testify, all appear to live in California. *See* Carome Decl. ¶ 2; Am. Compl. ¶ 43.

9

This factor tips slightly in Twitter's favor.

## V. Location of Relevant Documents

"The location of relevant documents and the ease of access to sources of proof is mostly a neutral factor, in light of the technological age in which we live, where there is widespread use of, among other things, electronic document production." *Tlapanco*, 207 F. Supp. 3d at 330–31 (internal quotation marks omitted). While Twitter states "that all documents and evidence related to the claims in this case are accessible from Twitter's San Francisco headquarters," Starr Decl. ¶ 3, there is no assertion that it would be at all inconvenient for Twitter to access the documents and evidence from New York. This factor is consequently neutral.

## VI. Availability of Process to Compel the Attendance of Unwilling Witnesses

No party has identified any potential witness, and there is no indication that a witness would not voluntarily testify. Consequently, "the availability of process to compel testimony is irrelevant to the transfer analysis." *Sentegra*, 2016 WL 3093988, at *6.

## VII. Relative Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Berman*, 30 F. Supp. 2d at 659. However, because there is no indication that Plaintiffs would be more burdened by having to litigate in California as opposed to here in New York, this factor is neutral. *See id.*

## VIII. Forum's Familiarity with the Governing Law

"In federal court, familiarity with the governing law is generally given little weight when considering transfer of venue." *Royal & Sun Alliance Insurance, PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 410 (S.D.N.Y. 2016). Plaintiffs argue only that "the number of ATA cases that have been filed in California is extremely low" and that ATA cases have been brought

10

in New York. *See* Opp'n at 15. This is irrelevant. Either forum "is equally capable of deciding" questions of federal law. *Dickerson v. Novartis Corp. & Alcon Labs., Inc.*, 315 F.R.D. 18, 32 (S.D.N.Y. 2016). This factor is thus neutral.

## IX. Plaintiff's Choice of Forum

A plaintiff's choice of forum generally is "accorded deference," but that deference diminishes "when the chosen forum is neither the plaintiff's home nor the place where the operative facts of the action occurred." *Tlapanco*, 207 F. Supp. 3d at 329 (internal quotation marks and alteration omitted).

Plaintiffs studiously avoid precise allegations about their ties to the Southern District of New York. Although they do not include any allegations of where Beatriz, Hernandez, Rey, and Paul reside, it appears clear that they live in California, *see* Carome Decl. ¶ 3, along with Reynaldo, *see* Am. Compl. ¶ 43. Plaintiffs instead choose to focus on Cain, one of the six plaintiffs in this action. *See* Opp'n at 16. Cain may have lived "in New York at the time of the Brussels attack," but now she is staying "with her parents in North Carolina temporarily." *Id.* Further, there is no suggestion that any of the operative facts took place in the Southern District of New York, nor that Cain even lived in the Southern District of New York.

Plaintiffs argue that venue choices are entitled to greater deference in actions brought pursuant to statutes with expansive venue provisions. *See* Opp'n at 10. They cite to Judge Learned Hand, who stated in a concurring opinion in *Ford Motor Co. v. Ryan*, 182 F.2d 329 (2d Cir. 1950) that where an action is brought pursuant to the expansive venue provision in 15 U.S.C. § 15, "a defendant must do more than show that the transfer will on the whole make the trial more convenient; it must make the trial markedly more convenient." *Id.* at 332. In the controlling opinion, Judge Frank also included the "plaintiffs' venue-privilege" as a factor in

11

deciding whether transfer was appropriate. *Id.* at 331–32.

Even assuming the same logic still applies[1] and extends to ATA cases, Twitter has satisfied its burden of making out a convincingly strong case for transfer. The locus of operative facts is the Northern District of California; litigating in the Northern District of California would be more convenient for Twitter without generally increasing the inconvenience to Plaintiffs; and most importantly, five of the six plaintiffs are litigating a related action in the Northern District of California.

## **CONCLUSION**

Twitter's motion to transfer is GRANTED. The Clerk of Court is directed to terminate all open motions and transfer this case to the Northern District of California.

Dated: New York, New York
April 25, 2017

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY
United States District Judge

---

[1] Twitter argues that "[t]he exceedingly high degree of deference Plaintiffs demand . . . cannot be reconciled with the congressional intent behind § 1404(a)." Reply, Dkt. 17, at 1. It cites a 1964 decision where the Supreme Court explained that in considering § 1404(a), "Congress was particularly aware of the need for provisions to mitigate abuses stemming from broad federal venue provisions." *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964); *see also JM Computer Servs., Inc. v. Schlumberger Techs., Inc.*, 886 F. Supp. 358, 359 (S.D.N.Y. 1995) ("[C]ourts have rejected the suggestion that a higher standard must be met in order to transfer antitrust cases."). The Court need not—and does not—address this argument in deciding this motion.